# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| **LAW SOLUTIONS OF CHICAGO** ) | |
| **LLC, et al.,** ) | |
| ) | |
| **Appellants,** ) | |
| ) | **Case Number:** |
| **v.** ) | **1:18-cv-00677-AKK** |
| ) | |
| **J. THOMAS CORBETT, U.S.** ) | |
| **Bankruptcy Administrator for the** ) | |
| **Northern District of Alabama,** ) | |
| ) | |
| **Appellee.** ) | |

## <u>MEMORANDUM OPINION</u>

Law Solutions of Chicago LLC, UpRight Law PLLC, and Mariellen Morrison (collectively referred to as "UpRight") appeal from the bankruptcy court's order imposing non-monetary and monetary sanctions against them. Doc. 1. In a nutshell, the bankruptcy court sanctioned UpRight based on its finding that UpRight breached a settlement agreement UpRight entered into with J. Thomas Corbett, the Bankruptcy Administrator for the Northern District of Alabama, and, by doing so, violated the court's order approving the settlement agreement, Rule 9011 of the Federal Rules of Bankruptcy Procedure, and §§ 526(a)-(b) and 707(b)(4). *See* doc. 34-11. UpRight contends that the court abused its discretion and failed to afford UpRight due process before sanctioning them. The appeal is

fully briefed, docs. 34, 35, 36, and ripe for review.  For the reasons detailed below, the order of the bankruptcy court is due to be affirmed.

## I.    <u>STANDARD OF REVIEW</u>

The district court sits as an appellate court in reviewing final decisions of a bankruptcy court.  28 U.S.C. § 158(a)(1).  Accordingly, the district court reviews the bankruptcy court's findings of fact under the clearly erroneous standard, while the bankruptcy court's legal conclusions are subject to de novo review.  *See, e.g. Educ. Credit Mgm't Corp. v. Mosley*, 494 F.3d 1320, 1324 (11th Cir. 2007).  *See also* Fed. R. Bankr. P. 7052 (incorporating Fed. R. Civ. P. 52); Fed. R. Bankr. P. 8013.  "The factual findings of the bankruptcy court are not clearly erroneous unless, in the light of all the evidence, '[the district court is] left with the definite and firm conviction that a mistake has been made.'"  *In re TOUSA, Inc.*, 680 F.3d 1298, 1310 (11th Cir. 2012) (citations omitted).

The court reviews the bankruptcy court's imposition of sanctions for abuse of discretion.  *In re Ocean Warrior, Inc.*, 835 F.3d 1310, 1315 (11th Cir. 2016) (citation omitted).  "'The application of an abuse-of-discretion review recognizes the range of possible conclusions the [bankruptcy] judge may reach.'"  *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1280 (11th Cir. 2010) (quoting *United States v. Frazier*, 387 F.3d 1244, 259 (11th Cir. 2004) (en banc)).  When reviewing for an abuse of discretion, the district court "must affirm unless [it] find[s] that the

[bankruptcy] court has made a clear error of judgment, or has applied the wrong legal standard.'" *Id.* The court may affirm the bankruptcy court "on any legal ground the record supports." *Gwynn v. Walker (In re Walker)*, 532 F.3d 1304, 1308 (11th Cir. 2008) (per curiam).

## II.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND

UpRight and Corbett entered into a Settlement Agreement, effective September 16, 2016, that resolved adversary proceedings in two bankruptcy cases, and other related disputes between the parties. Doc. 34-1 at 10-17. Under the terms of the Agreement, UpRight agreed to pay $50,000 to the bankruptcy trustees in the two underlying cases, and to a six-month bar on filing new cases in this District for clients who retained UpRight during this period. *Id.* at 11-12. Relevant to the sanctions at issue, the Agreement mandated also that "[f]or those clients who retained UpRight prior to March 21, 2016, UpRight shall provide the services referred to in Paragraph 9 of UpRight's standard client retention agreement without additional charge for attorney's fees," with the exception of fees incurred for pursuing or defending adversary proceedings. *Id.* at 12-13. After a hearing, the bankruptcy court issued an Agreed Order approving the Agreement. *Id.* at 44-45.

Thereafter, UpRight filed six cases for debtors who had retained UpRight prior to March 21, 2016 (the "Post-Settlement Cases"). Doc. 34-11 at 17. Corbett

discovered subsequently that the Rule 2016(b) attorney disclosure statements UpRight filed in those cases reflected "an extensive list of services excluded from the base attorney fee of $1,250.00," including services the Agreement required UpRight to provide without any additional fees. Docs. 34-1 at 48; 34-11 at 16. Based on the disclosure statements, Corbett believed that UpRight had violated the terms of the Agreement. Doc. 34-1 at 48. Consequently, Corbett filed motions asking the bankruptcy court to determine whether UpRight had breached the Agreement, filed materially inaccurate disclosure statements, and violated §§ 526(a)(2)-(3) and 704(b)(4)(C)-(D). Docs. 34-1 at 48-50; 34-11 at 16. In the event the court answered the first question in the affirmative, Corbett asked the court to set a show cause hearing regarding why the court should not impose appropriate sanctions against UpRight, including disgorgement of attorney's fees, civil penalties, or an injunction under §§ 105 and 526(c)(5), or the court's inherent authority. Docs. 34-1 at 48-50; 34-11 at 16.

In response, UpRight filed amended attorney disclosure statements that expanded "the scope of legal services they would provide without additional fees in the Post-Settlement Cases that remained open . . . ." Docs. 3-3 at 97-98; 34-1 at 85-86; 34-11 at 18-19. UpRight also amended their retention agreements and sent letters to their clients in the open Post-Settlement Cases stating that, contrary to statements in their original retainer agreement, UpRight had not and would not

charge fees in addition to the flat fee the clients paid for UpRight's services in those cases. Docs. 3-3 at 98-100; 34-11 at 18-19.

The bankruptcy court held a hearing on the motions on July 13, 2017. Docs. 34-1 at 83-95; 34-11 at 19. At that hearing, Corbett argued that UpRight violated §§ 526(a)(2)-(3) and 707(b)(4) by filing attorney disclosure statements that did not comply with the terms of the Settlement Agreement. Doc. 34-1 at 85-86. UpRight countered that they did not violate the Agreement because they only charged their flat fee in the Post-Settlement Cases, and they never collected any additional fees for their services in those cases. *See id.* at 86-88. The bankruptcy court concluded that an evidentiary hearing was necessary "to determine the extent to which [UpRight] failed to comply with the order approving and implementing the settlement agreement . . . and to further determine what sanctions, if any, are appropriate due to such noncompliance." *Id.* at 98. Accordingly, the bankruptcy court ordered UpRight to appear "and show cause, if there be any, why their failure to comply with the settlement agreement and order implementing the same does not warrant contempt sanctions, which may include disgorgement of fees and expenses . . . , and additional monetary and non-monetary sanctions, which may include, without limitation, a bar from [UpRight] practicing in [this District] for a period of up to two (2) years . . . ." *Id.* at 99.

At the evidentiary hearing, Corbett argued that UpRight filed inaccurate attorney disclosure statements in the Post-Settlement Cases because the statements conflicted with UpRight's obligations under the Agreement. Doc. 3-3 at 71-73. Although Corbett admitted that the Agreement did not expressly require UpRight to amend their retention agreements or disclosure statements, he argued that UpRight should have amended their disclosure statements to accurately reflect the scope of services they agreed to provide to their clients for no additional charge. *See id.* at 74-76. In response, UpRight countered that they did not intend to violate the Agreement, and had not violated it because they did not actually charge any additional fees for their services in connection with the Post-Settlement Cases. *Id.* at 87-88, 104. When questioned about their duty, if any, to amend their disclosure statements under Rule 2016(b), UpRight testified that they did not believe they violated that Rule because the statements they filed were consistent with the retainer agreements their clients had signed. *See id.* at 110, 112. *See also* doc. 34-8 at 156-62. After the evidentiary hearing, UpRight and Corbett filed post-hearing briefs in support of their respective positions, and responded to each other's briefs. Docs. 34-9 at 6-40; 34-10 at 6-35, 186-229.

On April 19, 2018, the bankruptcy court issued an order finding that UpRight intentionally filed false and misleading attorney disclosure statements in the Post-Settlement Cases that "wrongfully exclude[d] legal services that were to

be provided under the Settlement [Agreement] for no additional fees," and that UpRight acted in bad faith. Doc. 34-11 at 18-19, 24. Based on those findings, the bankruptcy court imposed the following sanctions under 11 U.S.C. §§ 105(a), 526, and 707(b)(4)(B):

- An 18-month practice injunction banning UpRight from filing any new bankruptcy cases in this District;

- A complete refund of all fees and expenses paid to UpRight by clients whose cases UpRight had not yet filed;

- Monetary penalties of $25,000 for each of the six Post-Settlement Cases, or $150,000 total; and

- Disgorgement of all attorney's fees and filing fees in the Post-Settlement Cases.

*Id.* at 25-27. This appeal followed. Docs. 1, 34.

## III.  ANALYSIS

UpRight raises several points of error that boil down to one question:  did the bankruptcy court abuse its discretion by imposing sanctions against them?  To answer that question, the court must determine whether the bankruptcy court had authority to sanction UpRight, and, if it did, whether it abused its discretion in exercising that authority.  For the reasons explained fully below, because the bankruptcy court had authority to impose sanctions against UpRight, and UpRight has not shown that the court made a clear error, applied the wrong legal standard, or violated their due process rights, the court's order is due to be affirmed.

## A. **Whether the bankruptcy court had authority to impose non-monetary sanctions**

The bankruptcy court invoked § 105(a) to impose non-monetary sanctions against UpRight, including an 18-month practice injunction. Doc. 34-11 at 26. Section 105(a) grants the court authority to sanction a party who violates a court order or rule, or to prevent an abuse of the bankruptcy process. 11 U.S.C. § 105(a); *In re Evergreen Security*, 570 F.3d 1257, 1273 (11th Cir. 2009). This authority under § 105(a) includes conducting disciplinary proceedings and suspending attorneys from practicing before the court. *In re Gleason*, 492 F. App'x 86, 88 (11th Cir. 2012).

UpRight argues it did not violate any court order and that the bankruptcy court erred by imposing the practice ban. Doc. 34 at 25-30. UpRight correctly notes that the bankruptcy court's order approving the Settlement Agreement did not adopt or incorporate any portion of the Agreement. *See* docs. 34 at 29; 34-1. Consequently, UpRight technically could not violate the Agreed Order by breaching the Agreement. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 381 (1994) ("The judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order."); *Matter of Baum*, 606 F.2d 592, 593 (5th Cir. 1979) (reversing a bankruptcy court's finding of contempt because the order violated did not "set forth in detail an unequivocal command"). However, UpRight waived this issue by failing to raise it

below. In fact, in its post-hearing brief, UpRight took a contrary position and expressly conceded that "[t]here are no circumstances under which the UpRight Respondents could have violated the Settlement Agreement and not violated the [Agreed] Order, and vice versa." Doc. 34-10 at n.4. As a result, UpRight's argument that it could not violate the Agreed Order by violating the Agreement is not properly before this court. *See In re Lett*, 632 F.3d 1216, 1226 (11th Cir. 2011) ("'Ordinarily an appellate court does not give consideration to issues not raised below.'") (quoting *Hormel v. Helvering*, 312 U.S. 552, 556 (1941)); *Access Now, Inc. v. Southwest Airlines, Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) ("This Court has 'repeatedly held that an issue not raised [below] and raised for the first time in an appeal will not be considered by this court.'") (quoting *Walker v. Jones*, 10 F.3d 1569 (11th Cir. 1994)).

Moreover, the bankruptcy court's error, if any, is harmless in light of other findings that support the imposition of the practice injunction. *See* Fed. R. Civ. P. 61 ("[T]he court must disregard all errors and defects that do not affect any party's substantial rights."); Fed. R. Bankr. P. 9005 ("Rule 61 Fed. R. Civ. P. applies in cases under the [Bankruptcy] Code."). To begin, the bankruptcy court imposed non-monetary sanctions under § 105(a) to prevent further abuse of the bankruptcy process based on its finding that UpRight had been "undeterred by the original sanctions imposed by the Settlement [Agreement.]" Doc. 34-11 at 26. Indeed, the

record shows that UpRight filed attorney disclosure statements in each of the six Post-Settlement Cases that misrepresented the scope of services the debtors could expect to receive for their flat-fee payment to UpRight. Doc. 34-11 at 17-19. *See also* doc. 35-2 at 6-28. In particular, the disclosure statements represented that payment of UpRight's $1250.00 flat fee did not include certain services that the Agreement required UpRight to provide to its clients at no additional charge, including discharge proceedings and motions to enforce the automatic stay. *See* docs. 34-1 at 12; 34-8 at 160; 35-2 at 6. Evidence that UpRight continued to exclude those services from their flat fee in the Post-Settlement Cases supports the bankruptcy court's conclusion that UpRight was undeterred by the original sanctions imposed by the Agreement and that it needed to impose additional measures to prevent further abuse of the bankruptcy process. Accordingly, the bankruptcy court did not err by imposing non-monetary sanctions under § 105(a).[1]

The bankruptcy court also has inherent authority to "control and discipline attorneys appearing before it," and it can rely on that authority to sanction attorneys, including by suspending them or revoking their filing privileges. *In re Snyder*, 472 U.S. 634, 643 (1985). *See also In re Walker*, 532 F.3d at 1309 (citation omitted). "To impose sanctions under these inherent powers, the court

---

[1] The record also supports the bankruptcy court's determination that UpRight filed inaccurate and misleading attorney disclosure statements, in violation of Rule 2016 of the Federal Rules of Bankruptcy Procedure. *See* pp. 15-17, *infra*; doc. 34-11 at 24. As a result, the court had authority under § 105(a) to sanction UpRight. 11 U.S.C. § 105(a); *In re Evergreen Sec., Ltd.*, 570 F.3d at 1273 (citing *Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539, 1542 (11th Cir. 1996)).

first must find bad faith." *In re Walker*, 532 F.3d at 1309 (citing *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995)). But, the court "'must do more than conclude that a party acted in bad faith; it should make specific findings as to the party's conduct that warrants sanctions.'" *In re Porto*, 645 F.3d 1294, 1304 (11th Cir. 2011) (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1123 (11th Cir. 2001)). "A finding of bad faith is a finding of fact that [the district court] review[s] only for clear error." *Id.* (citations omitted).

The bankruptcy court's finding of bad faith is contained in the following passage:

> [Corbett] argued that the Amended Attorney Disclosures were too little, too late, and the court agrees. The amendments were self-serving. Once [Corbett's] Motions were filed, [UpRight] knew they faced possible additional sanctions. They were not motivated by a good faith attempt to correct an inadvertent oversight. Rather, the court concludes that filing Settlement-compliant Attorney Disclosures when the Post-Settlement Cases were originally filed would have required [UpRight] to deviate from their high-volume, monolithic business model, which they were not willing to do. Apparently, [UpRight was] under the misconception that [Corbett] had closed his files on the settled [cases] and would not discover their non-compliance. Sanctions of $50,000, followed by a six-month bar on filing new cases was insufficient to get [UpRight's] attention; they simply ignored the remainder of the Settlement. If [UpRight] had been acting in good faith and wanted to demonstrate the same to the court and [Corbett], they would have closely monitored their case filing in this District to make certain their Attorney Disclosures in the Post-Settlement Cases complied with the Settlement. They did not.

Doc. 34-11 at 19. Upright is certainly correct that the bankruptcy court did not expressly use the term "bad faith." *See* doc. 36 at 11. However, implicit in a

finding that UpRight did not act in good faith, coupled with the reference to, among other things, that UpRight consciously engaged in conduct that would not "deviate from their high-volume, monolithic business" and that was based on "the misconception that [Corbett] had closed his files . . . and would not discover their non-compliance," doc. 34-11 at 19, is a finding that UpRight acted in bad faith.

Moreover, the bad faith finding is supported by the bankruptcy court's specific findings that UpRight filed misleading attorney disclosure statements in the six Post-Settlement Cases. *See id.* at 17-19, 24. As the court noted, the filings harmed the debtors by preventing them from knowing the true scope of services they were entitled to receive from their initial fee. *Id.* at 21. The court found also that the prior voluntary sanctions under the Settlement Agreement had not deterred UpRight and that UpRight's contention that they simply made a mistake defies logic. *Id.* at 19, 24. In fact, although UpRight testified at the hearing that they did not intend to violate the Agreement and believed their disclosure statements did not violate the Agreement or Rule 2016(b), *see* doc. 3-3 at 110-12, the bankruptcy court discounted that testimony and found UpRight's arguments on those points "incredulous," *see* doc. 34-11 at 20. In making this credibility determination, the court noted that the Agreement "was for the benefit of the debtors . . . who knew nothing about the [Agreement]," that the debtors "knew only what [UpRight] disclosed in their Attorney Disclosures . . . , which misrepresented the services the

debtors were entitled to receive from UpRight," and that "if the debtors were not made aware of the scope of legal services they were entitled to receive in return for their flat fee payment, then the [Agreement's] requirement that the scope of services be expanded was illusory and of no benefit to [the debtors] . . . ." Doc. 34-11 at 19-20. Such credibility assessments are "uniquely the function of the trier of fact." *United States v. Peters*, 403 F.3d 1263, 1270 (11th Cir. 2005). The court will not disturb them, *see In re Kane*, 755 F.3d 1285, 1288 (11th Cir. 2014) (citing *In re Englander*, 95 F.3d 1028, 1039 (11th Cir. 1996)), especially where, as here, the record supports the bankruptcy court's finding of bad faith.

For all these reasons, the bankruptcy court's finding is not clearly erroneous, *see In re TOUSA, Inc.*, 680 F.3d at 1310, and the bankruptcy court could properly rely upon its inherent authority to impose non-monetary sanctions, including the practice injunction, against UpRight.

**B.**    **Whether the bankruptcy court abused its discretion by imposing monetary sanctions**

The bankruptcy court relied upon Rule 9011 and §§ 526(c) and 707(b)(4)(B) to impose monetary sanctions against UpRight, including $150,000 in civil penalties, and the disgorgement of attorney's fees and filing fees in the Post-Settlement Cases. Doc. 34-11 at 23-25. In broad strokes, the bankruptcy court imposed these sanctions based on its findings that UpRight filed false and misleading attorney disclosures that lacked evidentiary support. *Id.* at 24.

UpRight challenges these monetary sanctions on several grounds, doc. 34 at 30-46, which the court addresses below.

1. Whether the court had authority to impose monetary sanctions under Rule 9011 and § 707(b)(4)(B)

Rule 9011 states in relevant part that an attorney signing or filing a "petition, pleading, written motion, or other paper . . . is certifying that to the best of the person's knowledge . . . the allegations and other factual contentions have evidentiary support . . . ." Fed. R. Bankr. P. 9011(b)(3). A bankruptcy court may impose sanctions for violations of Rule 9011, and the sanctions imposed may include "an appropriate civil penalty." 11 U.S.C. § 707(b)(4)(B); Fed. R. Bankr. P. at 9011(c). Here, the bankruptcy court found that UpRight violated Rule 9011 by filing attorney disclosure statements in the Post-Settlement Cases that contained material statements that were false and misleading, and that lacked evidentiary support. Doc. 34-11 at 24. UpRight argues that their disclosure statements accurately reflected the terms of their retention agreements with their clients, and that the bankruptcy court's finding is based on a mistake of law and is clearly erroneous. Doc. 34 at 36-40. The court is not persuaded.

Section 329(a) requires attorneys to "file with the [bankruptcy] court a statement of the compensation paid or agreed to be paid . . . for services rendered or to be rendered in contemplation of or in connection with [the bankruptcy case], and the source of such compensation." 11 U.S.C. § 329(a). Rule 2016(b)

14

implements § 329 and further requires attorneys to file "[a] supplemental statement . . . within 14 days after any payment or agreement not previously disclosed." Fed. Bankr. R. P. 2016(b). The disclosure requirements of § 329(a) and Rule 2016(b) are "mandatory not permissive." *In re Investment Bankers, Inc.*, 4 F.3d 1556, 1565 (10th Cir. 1993) (quoting *In re Bennett*, 133 B.R. 374, 378 (Bankr. N.D. Tex. 1991)). Courts have consistently held § 329(a) and Rule 2016(b) require full and candid disclosure of an attorney's fee agreement with a debtor. *See In re Dellutri Law Group*, 482 B.R. 642, 649 (Bankr. M.D. Fla. 2012); *In re McTyeire*, 357 B.R. 898, 904-05 (Bankr. M.D. Ga. 2006); *In re Saturley*, 131 B.R. 509, 517 (Bankr. D. Me. 1991) ("Coy or incomplete disclosures which leave the court to ferret out pertinent information from other sources are not sufficient. Anything less than the full measure of disclosure leaves counsel at risk that all compensation may be denied.").

Turning to the specifics here, UpRight filed attorney disclosure statements representing that the flat fee of $1250.00 they charged did not include the provision of services that the Settlement Agreement required UpRight to provide to their clients "without additional charge for attorney's fees . . . ." Doc. 34-1 at 7, 12-13. As UpRight admits, their disclosure statements in the Post-Settlement Cases "represented to the world that it was possible that UpRight could charge those [additional] fees," doc. 3-3 at 97—charges that the Agreement prohibited,

*see* doc. 34-1 at 12. As such, UpRight could not have truthfully agreed for their clients to pay additional fees for the services identified in the disclosure statements. In that respect, the disclosure statements did not provide a full and candid report of UpRight's actual fee agreement in the Post-Settlement Cases, and "misrepresented the scope of services [] debtors could expect to receive in exchange for their flat-fee payment to [UpRight.]" Doc. 34-11 at 24. This rendered the disclosure statements false and misleading, and supports the bankruptcy court's finding that the statements' provisions regarding additional fees for services lacked evidentiary support. *See id.*

UpRight attempts to avoid that conclusion by arguing that their disclosure statements accurately reflected their retention agreements with debtors and, relatedly, the compensation the debtors agreed to pay. Doc. 34 at 36-40. *See also* doc. 3-3 at 110. This argument misses the mark because, as discussed above, the Settlement Agreement mandated that UpRight "shall provide" services identified in their retention agreements and disclosure statements "without additional charge for attorney's fees." Doc. 34-1 at 7, 12. As such, the Agreement necessarily changed the compensation agreement between UpRight and their clients regarding fees in the Post-Settlement Cases. Thus, even if the disclosure statements accurately reflected UpRight's compensation agreement when the debtors initially retained UpRight and signed a retention agreement, the disclosure statements were

no longer accurate after the effective date of the Agreement. Consequently, UpRight had an obligation to amend their disclosure statements before filing them in the Post-Settlement Cases.[2] *See* Bankr. R. P. 2016(b). By failing to do so, UpRight filed disclosure statements that contained provisions regarding additional fees in the Post-Settlement Cases that were contrary to the terms of the Agreement, and in doing so, UpRight misrepresented what they actually agreed for their clients to pay for UpRight's services. Therefore, because the bankruptcy court's finding that the provision was false and without evidentiary support is not clearly erroneous or based on a mistake of law, the court did not err by concluding that UpRight violated Rule 9011, and had authority under the Rule and § 707(b)(4)(B) to impose sanctions.

> 2. <u>Whether the bankruptcy court had authority to impose monetary sanctions under § 526</u>

Section 526 provides that "[a] debt relief agency[3] shall not . . . make any statement . . . in a document filed in a case or proceeding under this title, that is untrue or misleading . . . , [or] misrepresent to any assisted person or prospective

---

[2] Similarly, UpRight should have amended their retention agreements to accurately reflect the amount they agreed to be paid for services in the Post-Settlement Cases. While UpRight correctly notes that the Settlement Agreement does not expressly require them to amend their client retention agreements, doc. 34 at 38-40, it implicitly required it because the Agreement changed the scope of services the clients were entitled to receive for their flat-fee. *See* doc. 34-1 at 12. Indeed, it is illogical to believe that either UpRight or Corbett intended for UpRight to continue to represent to debtors that they would charge additional fees for services the Agreement required UpRight to provide for no additional fee.

[3] UpRight qualifies as a debt relief agency. 11 U.S.C. § 101(12A); Docs. 3-3 at 109; 34-11 at 9.

assisted person, directly or indirectly, affirmatively or by material omission, with respect to [] the services that such agency will provide to such person . . . ." 11 U.S.C. § 526(a)(2)-(3). Section 526 mandates the disgorgement of attorney's fees "if such agency is found, after notice and a hearing, to have [] intentionally or negligently failed to comply with any provision of this section." *Id.* at § 526(c)(2)(A). The court may also "impose an appropriate civil penalty" if it "finds that a person intentionally violated this section, or engaged in a clear and consistent pattern or practice of violating this section . . . ." *Id.* at § 526(c)(5).

The bankruptcy court found that UpRight failed to comply with § 526 by filing false and misleading attorney disclosure statements in the Post-Settlement Cases. *See* doc. 34-11 at 23-24. As stated previously, the disclosure statements misrepresented the scope of services UpRight must provide to their clients for their flat fee in those cases. *See* pp. 15-17, *supra*; Docs. 34-1 at 12; 34-8 at 160; 35-2 at 6. Consequently, the bankruptcy court did not err by concluding that UpRight violated § 526(a)(2) and (3). *See* doc. 34-11 at 23-25. In light of those violations, disgorgement of attorney's fees is warranted after notice and hearing if UpRight intentionally or negligently violated the code. 11 U.S.C. § 526(b)(2)(A). And, the bankruptcy court may impose a civil penalty if it finds that the violation was intentional or that UpRight engaged in a clear and consistent pattern of violations. *Id.* at § 526(b)(5)(B).

18

As to those issues, the bankruptcy court found that UpRight's "indifference with respect to their obligations under the Settlement was tantamount to an intentional misrepresentation made in each Post-Settlement Case." Doc. 34-11 at 24. But, as UpRight points out, generally, "[i]ntent . . . requires something more than 'indifference' . . . ." *W. Diversified Servs. v. Hyundai Motor Am., Inc.*, 427 F.3d 1269, 1274 (10th Cir. 2005). However, "[b]ecause direct evidence of intent is rarely available, a court may infer [] intent [] from the totality of the circumstances," and reckless indifference may be sufficient to establish intent in some cases. *In re DeJulio*, 322 B.R. 456, 461 (Bankr. M.D. Fla. 2005) (citing *In re Cram*, 178 B.R. 537, 540 (Bankr. M.D. Fla. 1995) and *In re Albanese*, 96 B.R. 376, 380 (Bankr. M.D. Fla. 1989)). This was the case here, where the bankruptcy court found that UpRight filed false and misleading disclosure statements due to their "failure to take seriously their obligations under" the Settlement Agreement, and that Morrison "apparently made no effort to read the Retention Agreements and Attorney Disclosures that were prepared by UpRight and filed under her electronic signatures in the Post-Settlement Cases." Doc. 34-11 at 21-22. Those findings suggest that the court found that UpRight had the requisite intent by acting with reckless indifference with respect to whether their disclosure statements accurately represented their fee agreements in the Post-Settlement Cases.

Alternatively, to the extent the bankruptcy court erred by concluding that UpRight made intentional misrepresentations, the error is harmless because the record supports a finding that UpRight acted negligently and engaged in a clear and consistent pattern or practice of violating § 526(a). To begin, UpRight's counsel admitted that UpRight made mistakes in filing the disclosure statements at issue. Doc. 34-1 at 86. That admission, coupled with UpRight's filing of multiple disclosure statements that misrepresented the scope of services debtors were entitled to in the Post-Settlement Cases, supports the conclusion that UpRight negligently failed to comply with § 526(a)(2) and (3). Therefore, under § 526(c)(2)(A), the bankruptcy court had authority to order the disgorgement of attorney's fees after notice and a hearing.

Next, although the order did not expressly state that UpRight engaged in a clear and consistent pattern or practice of violating § 526(a), *see* doc. 34-11, the bankruptcy court found that UpRight filed false and misleading disclosure statements that misrepresented the services UpRight agreed to provide for a flat fee in each of the six Post-Settlement Cases. *Id.* at 18-19. In addition, the court "assume[d] that if there were a hundred Post-Settlement Cases instead of six, none of the Attorney Disclosures [in those 100 cases] would have complied with the Settlement." *Id.* at 18, n.17. This suggests that the bankruptcy court in fact found that UpRight had engaged in a clear and consistent pattern or practice of filing

misleading attorney disclosure statements in violation of § 526(a)(2) and (3). Moreover, the nearly identical disclosure statements UpRight filed in the Post-Settlement Cases suggest a "standard or routine way of operating" by UpRight, and support the court's finding of a clear and consistent pattern or practice of violations. *See In re Maxwell*, 281 B.R. 101, 123 (Bankr. D. Mass. 2002) (quotation omitted). As a result, the bankruptcy court had authority to impose "an appropriate civil penalty" under § 526(b)(5)(B).[4]

### 3. Whether the bankruptcy court violated UpRight's due process rights by imposing monetary sanctions without sufficient notice

The court turns next to UpRight's due process argument. Doc. 34 at 10, 30-35. "Due process mandates that an attorney be given fair notice that his conduct may warrant sanctions and the reasons why." *Adkins v. Christie*, 227 F. App'x 804, 806 (11th Cir. 2007) (citing *Donaldson v. Clark*, 819 F.2d 1551, 1559-60 (11th Cir. 1987)). "Notice can come from the party seeking sanctions, from the court, or from both." *In re Mroz*, 65 F.3d at 1575 (citing *Donaldson*, 819 F.2d at

---

[4] UpRight argues that the bankruptcy court could not properly impose sanctions under § 526(b)(5)(B) because the court could not establish a clear and consistent pattern or practice of violations without relying on UpRight's bad acts in other jurisdictions. *See* doc. 34 at 44-46. As discussed above, the misleading attorney disclosure statements filed in each of the six Post-Settlement Cases is sufficient evidence for the court to determine that UpRight engaged in a clear and consistent pattern or practice of violations. Moreover, in addition to Rule 9011 and §§ 526 and 707 that the court relied on, the court also could have imposed monetary sanctions under its inherent authority based on its finding that UpRight acted in bad faith. *In re Mroz*, 65 F.3d at 1575. *See also* pp. 11-13, *supra*. The bankruptcy court also has authority to impose monetary sanctions under § 105(a) based on its finding that UpRight filed false and misleading disclosure statements in violation of Rule 2016(b). Fed. R. Bankr. P. 2016(b). *See also* pp. 15-17, *supra*

1560). "In addition, the attorney must be given a chance to respond to the allegations and justify his or her actions." *Adkins*, 227 F. App'x at 806 (citing *In re Mroz*, 65 F.3d at 1575-76).

a. *Notice of sanctions under §§ 105 and 526*

UpRight argues that the bankruptcy court erred by failing to provide notice under §§ 105 and 526. Doc. 34 at 20, 23, 33. This argument fails for two primary reasons. First, UpRight did not raise any objection in their post-hearing reply brief relating to Corbett's or the bankruptcy court's purported failure to provide notice under §§ 105 or 526. *See* doc. 34-10 at 203-229. As a result, UpRight waived their argument related to the purported failure to provide notice under these two sections. *See Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1296 (11th Cir. 2010) ("[I]ssues not raised [below] should not be considered on appeal.") (citations omitted); *In re Parker*, 485 F. App'x 989, 992 (11th Cir. 2012) (finding that the appellant waived his arguments regarding the bankruptcy court's findings of fact by not raising them in the bankruptcy court) (citation omitted).

Second, the record belies UpRight's contention. As UpRight admits, Corbett asked the court in his motions to determine whether the court should impose sanctions under §§ 105 and 526(a) for violations of the Settlement Agreement, and argued at the first hearing on the matter that UpRight violated § 526(a). Docs. 34 at 12, 17-18; 34-1 at 50, 85. Indeed, UpRight concedes they

were "to be sure, placed on notice of the specific conduct [Corbett] believed and the court suspected was sanctionable . . . ." Doc. 34 at 33. These admissions refute UpRight's assertions that Corbett waited until his post-hearing brief to raise these code sections and thereby deprived UpRight of an opportunity to be heard on the issue. Doc. 34 at 34. In addition, UpRight had an opportunity to reply to Corbett's post-hearing brief, docs. 34-10 at 203-229, and argued in response that the court should not impose civil penalties under §§ 105(a) and 526(a)(2), or order the disgorgement of fees, *id.* at 216, 222-24, 227-29. Put simply, UpRight had notice and the opportunity to respond.

Perhaps because of this undisputed record, UpRight challenges only the sufficiency of the actual notice they received, arguing that the court failed to inform UpRight that their conduct may be measured under §§ 105 and 526. Docs. 34 at 33-34; 36 at 18-19. This argument is unavailing because, as mentioned, Corbett expressly asked the court to determine whether UpRight violated § 526 and whether the court should impose sanctions under §§ 105 and 526(c)(5). Doc. 34-1 at 50. In that respect, because notice of potential sanctions may "come from the party seeking sanctions, from the court, or from both," *In re Mroz*, 65 F.3d at 1575, it is of no consequence that the show cause order did not mention any specific code sections.

UpRight's related contention that the court did not hear arguments or receive evidence regarding whether UpRight's conduct violated any section of the bankruptcy code is also unavailing. *See* doc. 34 at 34-35. At the evidentiary hearing, the court received evidence and heard argument regarding whether UpRight filed untrue and misleading attorney disclosure statements in the Post-Settlement Cases. Doc. 3-3 at 71-76, 88-89, 97-98, 104, 108-16. The evidence included testimony from UpRight's witness that UpRight believed their disclosure statements were not misleading or untrue. *Id.* at 110-16. UpRight does not dispute that the court rejected that testimony and found that Upright filed disclosure statements that were untrue, misleading, and misrepresented the scope of services UpRight had to provide their clients. It is this very conduct that the court found to violate § 526, and that provided the basis for the order disgorging fees and the assessing of civil penalties under § 526(c). Doc. 34-11 at 24-25. Accordingly, UpRight had an opportunity to present evidence and to defend against the allegations regarding the specific conduct and Code violations, and the court did not violate UpRight's due process rights by imposing monetary sanctions under §§ 526 and 105. *See F.T.C. v. Leshin*, 719 F.3d 1227, 1235 (11th Cir. 2013) ("It is by now well-settled law that due process is satisfied when a civil contempt defendant receives notice and an opportunity to be heard . . . .").

### b.     *Notice of sanctions under Rule 9011 and § 707(b)(4)(B)*

Before a bankruptcy court can impose sanctions under Rule 9011 and § 707(b)(4), the court must give the subject party notice and an opportunity to respond. Fed. R. Bankr. P. 9011(c); *In re Bonilla*, 573 B.R. 368, 377 n.8 (Bankr. D.P.R. 2017) ("A finding that the safe harbor provisions do not apply to sanctions under § 707(b)(4)(C) and (D) would eviscerate the safe harbor provision of Rule 9011.") (quoting *In re Parikh*, 508 B.R. 572, 595 (Bankr. E.D.N.Y. 2014)). Relevant here, the court may initiate Rule 9011 sanctions by "enter[ing] an order describing the specific conduct that appears to violate [Rule 9011(b)] and directing an attorney, law firm, or party to show cause why it has not violated [the Rule] with respect thereto." Fed. R. Bankr. P. 9011(c)(1)(B). UpRight argues correctly that the bankruptcy court erred by imposing sanctions under Rule 9011 and § 707(b)(4)(B) without giving it notice that Rule 9011 may apply and an opportunity to cure. Doc. 34 at 30-33. The error is harmless, however, because Rule 9011's safe harbor provision does not apply to sanctions imposed under §§ 105(a) or 526(c), or the bankruptcy court's inherent authority. *See* 11 U.S.C. § 526(c); *In re Evergreen Security*, 570 F.3d at 1273. Therefore, because UpRight received sufficient notice that it could be sanctioned under §§ 105 and 526(c), reversal is not warranted here.

### C.    Whether the imposition of purportedly punitive sanctions violated UpRight's Due Process Rights

UpRight argues also that the bankruptcy court wrongfully imposed punitive sanctions without affording adequate due process protections.  Doc. 34 at 46-50.  UpRight contends that, because the sanctions are punitive in nature, the bankruptcy court had to provide them first with all of their criminal due-process rights, including the presumption of innocence and the highest standard of proof.  *Id.* at 24.  "The line between civil and criminal contempt sanctions is not always clear," and whether sanctions are civil or criminal in nature determines the level of process a court must provide to the affected party.  *Green Point Credit, LLC v. McLean (In re McLean),* 794 F.3d 1313, 1323-24 (11th Cir. 2015).  For the reasons stated below, the court finds that UpRight has failed to show that the monetary sanctions here are punitive.

"'Civil penalties must either be compensatory or designed to coerce compliance.'"  *Gowdy v. Mitchell*, 835 F.3d 1310, 1317 (11th Cir. 2016) (quoting *In re Evergreen Sec., Ltd.*, 570 F.3d 1257, 1280 (11th Cir. 2009)).  Coercive sanctions "'cannot be any greater than necessary to ensure [] compliance and may not be so excessive as to be punitive in nature.'"  *In re McLean*, 794 F.3d at 1323 (quoting *Jove*, 92 F.3d at 1558).  On the other hand, "[p]unitive sanctions . . . take the form of a fixed fine and have no practical purpose other than punishment . . . ."  *Id.*  As UpRight puts it, the monetary sanctions imposed are punitive because the

bankruptcy court did not find "that any debtor or [Corbett] suffered a monetary loss of any kind . . . ." Doc. 34 at 47, n.19. *See also* doc. 3-3 at 134 (noting that "no blood was spilled"). But, disgorgement of attorney's fees is, by nature, a compensatory sanction. Moreover, based on the court's finding that UpRight negligently filed misleading attorney disclosure statements in the Post-Settlement Cases and the mandatory language of § 526(c),[5] the disgorgement of attorney's fees was required as a sanction. Consequently, the bankruptcy court did not abuse its discretion by ordering the disgorgement of fees.

Next, UpRight argues that the practice injunction and civil penalty are punitive because UpRight filed amended disclosure statements prior to the sanctions hearing and were in compliance with the Agreement and Agreed Order. Doc. 34 at 20, 49-50. In support, UpRight primarily relies upon *In re McLean*, a case where the debtors initiated an adversary proceeding against a creditor, alleging that the creditor's proof of claims violated § 542(a)(2) and the discharge injunction by seeking to recover a debt discharged in a prior bankruptcy action.

---

[5] 11 U.S.C. § 526(c)(2) provides as follows:

(2) Any debt relief agency <u>shall be liable</u> to an assisted person in the amount of any fees or charges in connection with providing bankruptcy assistance to such person that such debt relief agency has received, for actual damages, and for reasonable attorneys' fees and costs if such agency is found, after notice and a hearing to have [] intentionally or negligently failed to comply with any provision of this section [] or section 528 with respect to a case or proceeding under this title for such assisted person. (emphasis added).

794 F.3d at 1317-18. The creditor withdrew the proof of claim, but the adversary proceeding proceeded to trial, where the debtors asked the court to impose sanctions for the misconduct. *Id.* at 1318. After the trial, the bankruptcy court found that the creditor violated the discharge injunction, and the court awarded the debtors compensatory sanctions for emotional distress and an additional $50,000 in "coercive sanctions." *Id.* The Eleventh Circuit reversed the non-compensatory sanctions of $50,000, finding "that these sanctions were punitive in nature and that the bankruptcy court erred by failing to afford [the creditor] the due process that imposing such sanctions requires." *Id.* at 1323. The Eleventh Circuit noted also that the bankruptcy court awarded the "coercive sanctions" to benefit the public, rather than the debtors, and that the creditor had already withdrawn the offending proof of claim when the court imposed sanctions. *Id.* at 1324.

UpRight's contention that *In re McLean* compels a conclusion that the sanctions imposed in this case are punitive, doc. 34 at 47-49, overlooks essential differences between these two cases. Specifically, there was no finding of bad faith in *In re McLean*, the case did not involve sanctions sought by the Bankruptcy Administrator against attorneys and debt relief agencies based on perceived abuse of the bankruptcy process, and it did not involve sanctions imposed after prior voluntary sanctions failed to coerce compliance with a settlement agreement, court order, or bankruptcy rules. *See* 794 F.3d at 1317-18. In contract, here, the

bankruptcy court found that UpRight's filing of amended disclosure statements in the Post-Settlement Cases was "too little, too late," and "self-serving." Doc. 34-11 at 19. Also, the bankruptcy court found that prior voluntary sanctions failed to coerce compliance with the Settlement Agreement and that additional measures were needed to prevent further abuse of the bankruptcy process. *Id.* Based on those differences, the record supports a finding that the civil penalty and practice injunction were reasonably designed to coerce UpRight's ongoing compliance with the Agreement and bankruptcy rules, and were not punitive sanctions designed solely to punish past behavior. As a result, the bankruptcy court's order did not violate UpRight's due process rights.

## IV.  CONCLUSION

Based on the foregoing, the bankruptcy court's order imposing sanctions against UpRight is due to be affirmed. A separate order will be entered.

**DONE** the 12th day of March, 2019.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE
